ALEXANDER G. CALFO (SBN 152891)
*alexander.calfo@btlaw.com*
KELLEY S. OLAH (SBN 245180)
*kelley.olah@btlaw.com*
GABRIELLE J. ANDERSON-THOMPSON (SBN 247039)
*gabrielle.anderson-thompson@btlaw.com*
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California  90067
Telephone:     (310) 284-3880
Facsimile:     (310) 284-3894

Attorneys for Defendants
DEPUY ORTHOPAEDICS, INC.; JOHNSON & JOHNSON
SERVICES, INC.; JOHNSON & JOHNSON (erroneously
sued as "Johnson & Johnson, Inc."); DEPUY
INTERNATIONAL LIMITED (erroneously sued as "DePuy
International, Ltd.")

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATYANA NAKHIMOVSKY,<br><br>         Plaintiff,<br><br>v.<br><br>DEPUY ORTHOPAEDICS, INC.,<br>JOHNSON & JOHNSON SERVICES,<br>INC., JOHNSON & JOHNSON, INC.,<br>DEPUY INTERNATIONAL, LTD.,<br>THOMAS P. SCHMALZRIED, M.D.,<br>THOMAS P. SCHMALZRIED, M.D. A<br>PROFESSIONAL CORPORATION; and<br>DOES 1 through 20, inclusive,,<br><br>         Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF**<br>**ACTION UNDER 28 U.S.C.**<br>**SECTION 1441(b) (DIVERSITY)**<br><br>JURY TRIAL DEMANDED |

Defendants DePuy Orthopaedics, Inc. ("DePuy"), DePuy International Limited, Johnson &

Johnson and Johnson & Johnson Services, Inc. (collectively, "removing defendants"), through

undersigned counsel, hereby remove the state-court action entitled *Tatyana Nakhimovsky v. DePuy*

*Orthopaedics, Inc. et al.*, Civil Action No. CGC-14-540916, filed in the Superior Court of

California, County of San Francisco.  Removal is warranted under 28 U.S.C. § 1441(b) because

this is a diversity action over which the Court has original jurisdiction under 28 U.S.C. § 1332.

In support of removal, removing defendants state as follows:

1.      On or about August 5, 2014, plaintiff commenced this action against the removing defendants, Thomas P. Schmalzried, M.D., Thomas P. Schmalzried, a Professional Corporation (collectively, "Dr. Schmalzried") and un-named Doe defendants, by filing a complaint in the Superior Court of San Francisco County, in the State of California, bearing case number CGC-14-540916.

2.      In this action, plaintiff alleges that she suffered various injuries as a result of being implanted with a Pinnacle Acetabular Cup System ("Pinnacle Cup System") marketed and sold by DePuy.  (Compl. ¶¶ 25-31.)

3.      This is one of more than 7,000 similar cases pending around the country involving personal-injury allegations by plaintiffs who were implanted with a Pinnacle Cup System manufactured by DePuy.  On May 23, 2011, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2244, *In re: DePuy Orthopaedics Inc., Pinnacle Hip Implant Products Liability Litigation*, before Judge Ed Kinkeade in the United States District Court for the Northern District of Texas.  Removing defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

4.      As set forth more fully below, this case is properly removed pursuant to 28 U.S.C. § 1441, because the Court has subject-matter jurisdiction over it, pursuant to 28 U.S.C. § 1332, and removing defendants have satisfied the procedural requirements for removal.

I.      **REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.**

5.      The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different States.

A.      **Complete Diversity Of Citizenship**

6.      Plaintiff is a citizen of the State of California.  (Compl. ¶ 2.)

7.      DePuy is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana, and is therefore a citizen of the State of Indiana for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

8.      DePuy International Limited is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the United Kingdom with its principal place of business in Leeds, England, and is therefore a citizen of the United Kingdom for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

9.      Johnson & Johnson and Johnson & Johnson Services, Inc. are, and were at the time plaintiff commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in New Brunswick, New Jersey, and are therefore citizens of the State of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

10.     Dr. Schmalzried and his professional corporation are citizens of the State of California.  (Compl. ¶¶ 7-8.)

11.     Plaintiff also names numerous "Doe" defendants, whose citizenship is disregarded for purposes of removal.  28 U.S.C. § 1441(b)(1).

12.     Thus, plaintiff is diverse from all defendants except Dr. Schmalzried.

13.     Dr. Schmalzried's presence in the case does not defeat diversity jurisdiction, however, because he was fraudulently joined.  Under the fraudulent-joinder doctrine, a court should disregard the citizenship of a defendant where, as here, there is "no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant." *Taylor v. Jeppesen DataPlan, Inc.*, No. C 10-1920 SBA, 2010 U.S. Dist. LEXIS 106160, at *5 (N.D. Cal. Sept. 27, 2010) (internal quotation marks and citation omitted); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

14.     That is precisely the case here.  Although plaintiff alleges claims against Dr. Schmalzried for strict liability, negligence, fraud and negligent misrepresentation,[1] there is no possibility that these claims would succeed under California law.

15.     ***First***, there is no possibility that plaintiff would prevail on any of her claims against Dr. Schmalzried because claims like plaintiff's – which rest on either a failure-to-warn theory or a defective-design theory – are preempted when they are brought against ***non-manufacturers*** of an FDA-approved product.  *See PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2581 (2011); *Mutual Pharm. Co. v. Bartlett*, 133 S. Ct. 2466 (2013); *see also* Decl. of Dr. Thomas P. Schmalzried ("Schmalzried Decl.") ¶ 2, *Sanchez v. DePuy Orthopaedics, Inc.*, No. CV 11-7867 (C.D. Cal.) (attached as Ex. 1) (attesting that Dr. Schmalzried "played no role in the manufacturing, packaging, labeling, regulatory submissions, sales, inspection, distribution, and adverse event and complaint reporting, handling or tracking for the Pinnacle Cup System").

16.     In *Mensing*, the U.S. Supreme Court ruled that all claims against generic drug manufacturers that were premised on a failure to warn are preempted by federal law based on the principle of impossibility preemption.  131 S. Ct. at 2581.  According to the Supreme Court, generic manufacturers cannot be found liable on a failure-to-warn theory because generic manufacturers have no power to unilaterally effectuate a label change; rather, they must use the same labels and warnings as those approved by the FDA with respect to the brand-name version of the drug.  *Id.* at 2575-76.  Thus, as long as the labels and warnings for the generic form of the drug match the labels and warnings that the FDA has approved for the brand-name form of the drug, generic manufacturers cannot as a matter of law be held liable under state tort law for failing to warn.

17.     Although *Mensing* involved failure-to-warn claims, the Supreme Court has reached a similar conclusion as to product-design claims as well.  In *Bartlett*, the Supreme Court held that a generic manufacturer could not "legally make [the relevant product] in another composition"

---

[1]     Plaintiff also asserts claims for alleged breach of warranty, but not against Dr. Schmalzried.  (*See* Compl. ¶¶ 60-70.)

under the Federal Food, Drug, and Cosmetic Act ("FDCA").  *Bartlett*, 133 S. Ct. at 2475 (internal quotation marks and citation omitted).  As the Court explained, "the FDCA requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based."  *Id.* (citing 21 U.S.C. §§ 355(j)(2)(A)(ii)-(v) and (8)(B); 21 C.F.R. § 320.1(c)).  Because it was "not possible" for the generic manufacturer defendant in *Bartlett* to "redesign" the product at issue to make it more useful or less risky, the Court concluded that causes of action based on a defective design are likewise preempted.  *See id.*; *see also Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 187 (5th Cir. 2012) ("[W]e are persuaded that [plaintiff's] design defect claim [against generic manufacturer] would be preempted [under *Mensing*].")*, cert. denied*, 134 S. Ct. 57 (2013); *Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 611 (N.D. Miss. 2013) (design-defect claims "are also preempted"); *In re Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 484 (E.D.N.Y. 2012) ("the 'federal duty of sameness,' also applies in the context of generic drug design") (internal quotation marks and citations omitted).

18.     As other courts have found, these principles apply in spades to non-manufacturing defendants such as Dr. Schmalzried.  After all, these defendants have "no authority" to effectuate changes to the product or its labeling either.  *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, MDL No. 2243 (JAP-LHG), No. 3:08-cv-00008-JAP-LHG, 2012 U.S. Dist. LEXIS 5817, at *26-28 (D.N.J. Jan. 17, 2012) (because a distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not independently do under federal law what state law requires of it"); *see also Stevens v. Cmty. Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, however, [the defendant] had no ability to change labeling or warnings and thus, like a generic manufacturer, [it] cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

19.     In *In re Fosamax*, for example, the court granted a distributor's motion for judgment on the pleadings after finding that the plaintiffs' state-law claims were preempted.  2012 U.S. Dist. LEXIS 5817, at *26-28.  The plaintiffs in *Fosamax* asserted a number of claims against

1   "the authorized distributor of branded Fosamax" that "emanated from a general theory of failure to

2   warn," including "defective design, negligence, fraud, misrepresentation, breach of express and

3   implied warranties, violation of consumer protection statutes, restitution, and loss of consortium."

4   *Id.* at *20-21.  In rejecting the plaintiffs' claims, the district court ruled that "[a]s a distributor of

5   Fosamax, [the distributor] ha[d] no power to change Fosamax labeling."  *Id.* at *27.  According to

6   the court, "[t]hat power lies with the applicant who . . . seek[s] approval to market Fosamax" – in

7   that case, Merck.  *Id.* at *27.  Additionally, the court noted that if the FDA had become aware of

8   new safety information in connection with Fosamax use that it believed should be included in the

9   labeling, the FDA would have notified Merck – not the distributor.  *Id.*  Because the distributor

10  "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax

11  labeling," it "could not independently do under federal law what state law requires of it."  *Id.* at

12  *28 (citing *Mensing*, 131 S. Ct. at 2579) (internal quotation marks omitted).  Accordingly, the

13  court found that "the state law claims brought against [the distributor] [were] preempted."  *Id.*

14        20.      Here, all of plaintiff's claims against Dr. Schmalzried rest on either a failure-to-

15  warn theory or a defective-design theory.  Because Dr. Schmalzried had "no power to unilaterally

16  change" either the design of the FDA-regulated Pinnacle Cup System or the warnings that

17  accompanied it, all of plaintiff's claims against him are preempted.[2]  For this reason alone, there is

18  no possibility plaintiff would prevail on any of her claims against Dr. Schmalzried, and he is

19  fraudulently joined.

20        21.      ***Second***, even absent preemption, plaintiff's claims against Dr. Schmalzried would

21  have no chance of success under California law.

22

23

24  [2]     Plaintiff's failure-to-test theory is nothing more than a failure-to-warn theory in disguise
    and is thus barred by *Mensing* too.  *See Gross v. Pfizer, Inc.*, 825 F. Supp. 2d 654, 659 (D. Md.
25  2011) ("Plaintiff contends that her allegation that PLIVA failed to test and inspect its products
    survives *Mensing*.  The Court fails to see how these allegations are but a piece of Plaintiff's larger
26  failure to warn claims.  Accordingly, *Mensing* preempts these allegations as they relate to
    Plaintiff's failure to warn claims."), *aff'd sub nom. Drager v. PLIVA USA, Inc.*, 741 F.3d 470 (4th
27  Cir. 2014).

28

22. **Strict Liability**. Plaintiff's strict-liability claim against Dr. Schmalzried has no chance of success. Although California allows application of strict-liability theories to participants outside the chain of distribution, the circumstances under which such liability is permitted are extremely narrow. In *Bay Summit Community Ass'n v. Shell Oil Co.*, the court articulated a three-part test for strict-liability claims against a non-manufacturing, non-distributing defendant:

> (1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process.

51 Cal. App. 4th 762, 776 (1996). The court went on to explain that the fact that "an entity was a link in the chain of getting goods to the market or that it participat[ed] in marketing a defective product is not enough to establish the defendant should be held strictly liable." *Id.* at 778 (internal quotation marks and citation omitted); *see also Taylor v. Elliott Turbomachinery Co.*, 171 Cal. App. 4th 564, 576 (2009) (a claim for strict liability failure to warn arises only where a plaintiff can prove, *inter alia*, that "the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process"). After all, and as other California courts have held, "[t]here is, implicit in the strict liability standard, a requirement that the defendant have some ability to control the manufacturing or distribution of the product." *Bruce v. Clark Equip. Co.*, No. Civ. S-05-01766 WBS KJM, 2007 U.S. Dist. LEXIS 25331, at *11 (E.D. Cal. Mar. 26, 2007); *Hanberry v. Hearst Corp.*, 276 Cal. App. 2d 680, 687-88 (1969) (holding that strict liability "should not be extended . . . to a general endorser" that was not "involved in manufacturing products for, or supplying products to, the consuming public").

23. Here, plaintiff has not alleged that Dr. Schmalzried controlled, or had any ability to control, the manufacturing or distribution of the product. Nor could he. As set forth in the attached declaration, Dr. Schmalzried "played no role in the manufacturing, packaging, labeling, regulatory submissions, sales, inspection, distribution, and adverse event and complaint reporting,

1  handling or tracking for the Pinnacle Cup System." *See* Schmalzried Decl. ¶ 2.  Accordingly,

2  there is no reasonable possibility that plaintiff can prevail on her strict-liability claims against Dr.

3  Schmalzried.

4        24.     In addition, plaintiff's design-defect strict-liability claim against Dr. Schmalzried

5  (Compl. ¶ 36(a)) is also barred because, under California law, "the entire category of medical

6  implants available only by resort to the services of a physician are immune from design defect

7  strict liability." *Artiglio v. Superior Court*, 22 Cal. App. 4th 1388, 1397 (1994); *see also Hufft v.*

8  *Horowitz*, 4 Cal. App. 4th 8, 19 (1992) ("As with prescription drugs, the harsher rule of strict

9  liability may discourage manufacturers from researching and marketing new medical devices due

10  to realistic fear of substantial adverse judgments, the high cost of strict liability insurance and the

11  uncertainty that such insurance will even be available. . . .  Public interest is served, rather than

12  thwarted, by relieving the manufacturer of strict liability for injuries resulting from implanted

13  medical devices that have been properly fabricated and marketed.").  There is no contention

14  anywhere in plaintiff's complaint that her Pinnacle Cup System was obtained other than by the

15  services of a physician.

16        25.     Finally, failure to adequately test (Compl. ¶ 36(c)) is not a recognized theory of

17  strict liability under California law.  *See Kennedy v. S. Cal. Edison Co.*, 268 F.3d 763, 771 (9th

18  Cir. 2001) ("This doctrine of strict liability extends to products which have design defects,

19  manufacturing defects, or warning defects."); *Currier v. Stryker Corp.*, No. 2:11-CV-1203 JAM-

20  EFB, 2011 U.S. Dist. LEXIS 118408, at *5 (E.D. Cal. Oct. 13, 2011) (same); *Artiglio*, 22 Cal.

21  App. 4th at 1392 (same).

22        26.     For these reasons too, plaintiff's strict-liability claims against Dr. Schmalzried have

23  zero likelihood of success.

24        27.     **Negligence.**  Plaintiff's claim for negligence against Dr. Schmalzried is similarly

25  destined to fail because plaintiff cannot establish that Dr. Schmalzried owed any independent duty

26  to her.  As set forth in the attached declaration, Dr. Schmalzried was merely one of eight surgeons

27  selected by DePuy to provide advice during the development of the Pinnacle Cup System.  *See*

28  Schmalzried Decl. ¶ 3.  He had no role in the manufacture or sale of the device.  *Id.* ¶ 2.  However,

1   no duty arises from "being the developer, inventor, or patent holder of a product or design."

2   *Murphy v. Aventis Pasteur, Inc.*, 270 F. Supp. 2d 1368, 1376-77 (N.D. Ga. 2003); *see also*

3   *Weseloh Family Ltd. P'ship v. K.L. Wessel Constr. Co.*, 125 Cal. App. 4th 152, 164 (2004) (design

4   engineers could not be held liable for general negligence because they owed no duty of care to

5   plaintiff property owners; courts have "invoked the concept of duty to limit [] the otherwise

6   potentially infinite liability which would follow from every negligent act"); *In re Rezulin Litig.*,

7   No. CV 03-1643-R(RZX), 2003 WL 25598915, at *1 (C.D. Cal. Apr. 28, 2003) (holding that a

8   patent holder and clinical investigator of an allegedly defective prescription drug was fraudulently

9   joined because he "owed no legal duty to any of the plaintiffs, and therefore, there [was] no

10   possibility that the plaintiffs [could] prove a cause of action against [him]").

11        28.    These rulings make good sense.  Otherwise, every individual who had any role in

12   the design of any component of any product, such as a vehicle, would potentially be liable for

13   negligence any time an individual was injured using it.  Such an approach would result in limitless

14   liability for millions of Americans who work in any capacity in which they provide input into the

15   design or manufacturing of any product.  Accordingly, our legal system limits liability to the

16   actual manufacturer of a product, which has a duty of care to those who buy its products.  *See*

17   *Morrow v. Wyeth*, No. B-05-209, 2005 U.S. Dist. LEXIS 43194, at *13-14 (S.D. Tex. Oct. 13,

18   2005) (noting that the law places liability on the manufacturer of an allegedly defective product,

19   not on the specific individuals involved in the design and manufacture of the product).  For this

20   reason too, Dr. Schmalzried is fraudulently joined.

21        29.    **Fraud-Based Claims.**  Plaintiff's claims against Dr. Schmalzried for fraud and

22   negligent misrepresentation (collectively, plaintiff's "fraud-based claims") fail for two reasons:

23   (1) plaintiff does not identify a single statement made by Dr. Schmalzried that was allegedly

24   deceptive; and (2) plaintiff fails to establish any connection between any actions by Dr.

25   Schmalzried and her implantation with the Pinnacle Cup System that could possibly satisfy the

26   reliance/causation elements of her fraud-based claims.

27        30.    Causes of action for both intentional and negligent misrepresentation require a

28   plaintiff to prove, *inter alia*, that the defendant engaged in a misrepresentation and that the

1   plaintiff relied on it.  *See, e.g., Young v. Fluorotronics, Inc.*, No. 10cv976-WQH-BGS, 2010 U.S.

2   Dist. LEXIS 117362, at *22-23 (S.D. Cal. Nov. 3, 2010) ("[t]he . . . elements of a cause of action

3   for [intentional misrepresentation] are:  (1) a misrepresentation, which includes a concealment or

4   nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to

5   induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages");

6   *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Serv. Grp., Inc.*, 89 Cal. Rptr.

7   3d 473, 483 (Cal. Ct. App. 2009) ("The elements of negligent misrepresentation are (1) the

8   misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it

9   to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable

10   reliance on the misrepresentation, and (5) resulting damage") (internal quotation marks and

11   citation omitted).

12          31.     Importantly, the "mere assertion of reliance is insufficient" to support fraud-based

13   claims; rather, a "plaintiff must allege the specifics of his or her reliance on the representation to

14   show a bona fide claim of actual reliance."  *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513,

15   520 (2004).  This is particularly true because the elements of plaintiff's fraud-based claims must

16   be alleged with the specificity required under Federal Rule of Civil Procedure 9(b).  *See, e.g.,*

17   *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209, at *3 (N.D. Cal. Feb. 10, 2011)

18   (holding that plaintiff must satisfy the pleading requirements of Rule 9(b) in order to state a claim

19   for negligent misrepresentation); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*

20   *Practices, & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1204 (C.D. Cal. 2011) (granting motion to

21   dismiss UCL claims where plaintiffs failed to meet the heightened pleading requirements of Rule

22   9(b)); *BBG Props., Inc. v. Eaton*, 342 F. App'x 919, 920 (5th Cir. 2009) (affirming trial court's

23   refusal to remand case to state court where the plaintiff "had not stated its fraud claim with

24   sufficient particularity" as required by Rule 9(b)).

25          32.     Here, plaintiff has not identified any specific statements that Dr. Schmalzried

26   allegedly made to her (or her doctors) regarding the safety or efficacy of the Pinnacle Cup System.

27   Nor has she alleged that she (or her doctors) relied on any such statements in selecting the

28   Pinnacle Cup System.  For both of these reasons, there is no "possibility" that plaintiff can recover

against Dr. Schmalzried on her negligent-misrepresentation and fraud claims. *See, e.g.*, *Aronis v. Merck & Co.*, No. CIV. S-05-0486 WBS DAD, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005) (finding fraudulent joinder of a distributor where "plaintiff d[id] not allege that [the distributor] contributed in any way to her injuries"; "[t]o state a claim against a defendant, a plaintiff must allege a causal connection between the injury and the conduct of that defendant"); *BBG Props.*, 342 F. App'x at 920 (affirming trial court's refusal to remand case to state court where the plaintiff "had not stated its fraud claim with sufficient particularity" with regard to the non-diverse defendant as required under Rule 9(b)); *Druker v. Fortis Health*, No. 5:06-cv-00052, 2007 U.S. Dist. LEXIS 402, at *11-13 (S.D. Tex. Jan. 4, 2007) (finding fraudulent joinder where the plaintiff "failed to lodge any meaningful factual allegations" and did not allege specific material misrepresentations upon which he relied as required by Rule 9(b)).

33. For all of these reasons, there is no possibility plaintiff would prevail on any of her claims against Dr. Schmalzried; accordingly, Dr. Schmalzried is fraudulently joined.

**B.** **Amount In Controversy**

34. Plaintiff claims that she has suffered "severe pain" (Compl. ¶ 26) and "severe and possibly permanent injuries, pain, suffering and emotional distress" (*id.* ¶ 31). Plaintiff seeks actual damages, including "[p]ast and future lost wages, medical and incidental expenses" and punitive damages. (*See id.*, Prayer For Relief.)

35. It is widely recognized that personal-injury claims facially meet the $75,000 jurisdictional threshold. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"). In addition, compensatory and punitive damages in excess of the jurisdictional amount of $75,000 have been awarded in product-liability cases in California. *See, e.g.*, *Stewart v. Union Carbide Corp.*, 190 Cal. App. 4th 23 (2010); *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202 (2006); *Jones v. John Crane, Inc.*, 132 Cal. App. 4th 990 (2005).

36. Other federal courts have similarly concluded that the amount in controversy exceeded $75,000 in pharmaceutical cases. *See, e.g.*, *Smith v. Wyeth, Inc.*, 488 F. Supp. 2d 625,

1   630-31 (W.D. Ky. 2007) (denying motion to remand); *Copley v. Wyeth, Inc.*, No. 09-722, 2009

2   WL 1089663 (E.D. Pa. Apr. 22, 2009) (same).

3       37.     Given plaintiff's claim that she has suffered "severe and possibly permanent

4   injuries, pain, suffering and emotional distress" and her request for punitive damages, it is evident

5   that the amount of recovery sought by plaintiff exceeds $75,000.

6   **II.     REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL
          REQUIREMENTS FOR REMOVAL.**

7

8       38.     DePuy, Johnson & Johnson and Johnson & Johnson Services, Inc. were each

9   served with plaintiff's Complaint on October 13, 2014.  DePuy International Limited was served

10  on October 16, 2014.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C.

11  § 1446(b).

12      39.     The Superior Court of San Francisco County is located within the Northern District

13  of California.  *See* 28 U.S.C. § 84.

14      40.     None of the removing defendants is a citizen of the State of California, the State

15  where this action was brought.  *See* 28 U.S.C. § 1441(b).

16      41.     It is well settled that co-defendants who are fraudulently joined need not join in the

17  removal.  *See Borsuk v. Mass. Mut. Life Ins. Co.*, No C 03-630 VRW, 2003 U.S. Dist. LEXIS

18  25259, at *7-8 (N.D. Cal. Sept. 4, 2003).  As set forth above, Dr. Schmalzried is fraudulently

19  joined.  *See* Section I.A, above.  Therefore, he need not consent to removal.

20      42.     No previous application has been made for the relief requested herein.

21      43.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served

22  upon removing defendants, which papers include the complaint, are attached collectively as

23  Exhibit 2.

24      44.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served

25  upon counsel for plaintiff and a copy is being filed with the Clerk of the Superior Court of the

26  County of San Francisco.

27

28

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

1    WHEREFORE, removing defendants respectfully remove this action from the Superior

2 Court of the County of San Francisco, in the State of California, bearing Number CGC-14-

3 540916, to this Court.

4                                    Respectfully submitted,

5 Dated: November 12, 2014                **BARNES & THORNBURG LLP**

6

7                                    By: _____

8                                        Alexander G. Calfo
                                         Kelley S. Olah
9                                        Gabrielle Anderson-Thompson
                                         Attorneys for Defendants
10                                       DEPUY ORTHOPAEDICS, INC.;
                                         JOHNSON & JOHNSON SERVICES,
11                                       INC.; JOHNSON & JOHNSON
                                         (erroneously sued as "Johnson & Johnson,
12                                       Inc."); DEPUY INTERNATIONAL
                                         LIMITED (erroneously sued as "DePuy
13                                       International, Ltd.")

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

EXHIBIT 1

1   Ralph A. Campillo (Bar No. 70376)
2   Wendy A. Tucker  (Bar No. 121122)
    ~~Michael M. Walsh (Bar No. 150865)~~
3   SEDGWICK LLP
4   801 South Figueroa Street, 19th Floor
    Los Angeles, CA 90017-5556
5   Telephone: 213.426.6900
6   Facsimile: 213.426.6921
    Email : ralph.campillo@sedgwicklaw.com
7           wendy.tucker@sedgwicklaw.com
8           michael.walsh@sedgwicklaw.com
    Attorneys for Defendant
9   THOMAS P. SCHMALZRIED, M.D.

10

11              UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
12

13  ARMAND SANCHEZ, et al.,              CASE NO. CV 11-7867

14          Plaintiffs,                  **DECLARATION OF DR. THOMAS**
15                                       **P. SCHMALZRIED**

16  vs.                                  Judge:  Hon. Jacqueline H. Nguyen

17  DEPUY ORTHOPAEDICS, INC., et
18  al.,

19          Defendants.

20  CATHERINE SHELTON,                   CASE NO. 2:11-cv-08082

21          Plaintiff,                   **DECLARATION OF DR. THOMAS**
22                                       **P. SCHMALZRIED**

23  vs.                                  Judge:  Hon. Dean D. Pregerson

24  DEPUY ORTHOPAEDICS, INC., et
25  al.,

26          Defendants.

27

28                  Decl. of Dr. Thomas P. Schmalzried

                            1

Exhibit 1 — 00014

I, THOMAS P. SCHMALZRIED, pursuant to 28 U.S.C. § 1746, hereby

~~declare under penalty of perjury that the following statements are true and correct, to~~

the best of my knowledge and belief:

1.      I am a practicing orthopedic surgeon and the Medical Director of the Joint

Replacement Institute in Los Angeles, California.  I am also the principal for Thomas

P. Schmalzried, M.D., A Professional Corporation, a California corporation.

2.      I played no role in the manufacturing, packaging, labeling, regulatory

submissions, sales, inspection, distribution, and adverse event and complaint

reporting, handling or tracking for the Pinnacle Cup System.  I had no control or

influence over DePuy's manufacturing, packaging, labeling, regulatory, sales,

inspection, distribution and adverse event and complaint reporting, handling or

tracking decisions regarding the Pinnacle Cup System.

3.      I was one of eight surgeons selected by DePuy who provided assistance to

DePuy with the design of the Pinnacle Cup System.  DePuy determined the final

design specifications for the Pinnacle Cup System and the product labeling content.

4.      The DePuy brochure, "Advancing High Stability and Low Wear" was created

by DePuy.  My only contribution to this brochure was a general educational

summary (including references to thirty four scientific and medical articles as

support for the data in this summary), written at the request of DePuy, entitled "High

Stability, Low Wear Metal-on-Metal Bearings: Benefits, Risks, and Alternatives."

As the title reflects, this paper discusses the benefits, risks and alternatives to metal-on-metal bearings.  The paper clearly outlines the special risks associated with all metal-metal bearings, and states my belief that "there is insufficient clinical data to demonstrate the overall superiority of any single bearing couple for all total hip patients" and "it is therefore reasonable to individualize the choice of bearing." The only Pinnacle-specific data in this educational paper was provided by DePuy and clearly labeled as "DePuy Internal Data."

5.     I was not a part of DePuy's internal complaint handling system for the Pinnacle Cup System and thus was not notified if DePuy received such complaints.

6.     I have never made any representations or statements to any physicians, or to any member of the public, including plaintiff, regarding whether a specific DePuy orthopedic implant product was suitable for any specific patient.  That is a decision made by the patient's physician and not by me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _10_ / _2 7_, 2011.

THOMAS P. SCHMALZRIED, M.D.

Decl. of Dr. Thomas P. Schmalzried

3

Exhibit 1 - 00016

EXHIBIT 2

OCT 1 5 2014

Law Department

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DePuy Orthopaedics, Inc.; Johnson & Johnson Services, Inc.; Johnson &
Johnson, Inc., DePuy International, Ltd. (continued)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Tatyana Nakhimovsky

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco Superior Court
400 McAllister Street, S.F., CA 94102

CASE NUMBER:
*(Número del Caso):* 14 - 5 4 0 9 1 6

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kenneth M. Seeger, Seeger Salvas LLP, 455 Market Street, Suite 1530, S.F., CA 94105 (415) 981-9260

DATE: AUG 0 5 2014
*(Fecha)*

CLERK OF THE COURT

Clerk, by
*(Secretario)*  D. STEPPE , Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* Johnson & Johnson Services, Inc.

under: [X] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
[X] other *(specify):* CCP 415.40
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Exhibit 2 - 00017

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Nakhimovsky v. DePuy Orthopaedics, Inc. et al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff  ☑ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

Thomas P. Schmalzried, M.D.
Thmas P. Schmalzried, M.D. A Professional Corporation
Does 1 through 20

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

Exhibit 2 - 00018

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Kenneth M. Seeger (CSBN 135862)
Seeger Salvas LLP
455 Market Street, Suite 1530
San Francisco, CA 94105
TELEPHONE NO.: (415) 981-92690   FAX NO.: (415) 981-9266
ATTORNEY FOR *(Name):* Plaintiff Tatyana Nakhimovsky

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
Nakhimovsky v. DePuy Orthopaedics, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CGC-14-540916 |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT: |

**ENDORSED CM-010**
FOR COURT USE ONLY
SAN FRANCISCO COUNTY SUPERIOR COURT
2014 AUG -5 AM 10: 39
CLERK OF THE COURT
BY: _____
D. STEPPE

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☑ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* Six
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 4, 2014
Adam R. Salvas
_____
(TYPE OR PRINT NAME)         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Exhibit 2 - 00019

CASE NUMBER: CGC-14-540916  TATYANA NAKHIMOVSKY VS. DEPUY ORTHOPAEDICS, II

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

DATE: JAN-07-2015

TIME: 10:30AM

PLACE: Department 610
400 McAllister Street
San Francisco, CA  94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance**  at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.10.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

## ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.

Exhibit 2 - 00020

Kenneth M. Seeger (State Bar No. 135862)
Adam R. Salvas (State Bar No. 191379)
Brian J. Devine (State Bar No. 215198)
SEEGER • SALVAS LLP
455 Market Street, Suite 1530
San Francisco, CA 94105

Telephone:   (415) 981-9260
Facsimile:   (415) 981-9266

Attorneys for Plaintiff
Tatyana Nakhimovsky

Date Served: 10/13/14
Company Served: JJ SVCS
Certified  CT   Personal   Reg. Mail   FEDEX   NP
Date Rec'd by Law Dept: 10/15/14
Entered into TeamConnect Yes   No
Matter ID #: 2014013080

*ENDORSED FILED*
*SAN FRANCISCO COUNTY SUPERIOR COURT*
*2014 AUG -5  PM 3: 39*
*D. STEPPE*

SUPERIOR COURT OF CALIFORNIA

FOR THE CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| TATYANA NAKHIMOVSKY, | No. CGC-14-540916 |
| Plaintiff, | COMPLAINT FOR: |
| vs. | (1) STRICT PRODUCT LIABILITY,<br>(2) NEGLIGENCE,<br>(3) FRAUD<br>(4) NEGLIGENT MISREPRESENTATION<br>(5) BREACH OF IMPLIED WARRANTIES,<br>(6) BREACH OF EXPRESS WARRANTY |
| DEPUY ORTHOPAEDICS, INC.,<br>JOHNSON & JOHNSON SERVICES,<br>INC., JOHNSON & JOHNSON, INC.,<br>DEPUY INTERNATIONAL, LTD.,<br>THOMAS P. SCHMALZRIED, M.D.,<br>THOMAS P. SCHMALZRIED, M.D. A<br>PROFESSIONAL CORPORATION; and<br>DOES 1 through 20, inclusive, | |
| Defendants. | JURY TRIAL DEMANDED |

1.     This is a product liability case involving a defective hip implant system. Plaintiff Tatyana Nakhimovsky had a Pinnacle Hip System[1] implanted in her left hip. The Pinnacle Hip System suffers from defects that cause excessive amounts of cobalt and chromium to wear from the surface of the acetabular insert and from the femoral head, which in turn causes the hip implant to fail and the surrounding tissue and bone to die. As a result of these defects,

[1] The Pinnacle Hip Systems that were implanted in Ms. Nakhimovsky were comprised of an acetabular cup, a metal-on-metal insert, a metal-on-metal femoral head, and a femoral stem.

SEEGER • SALVAS LLP

- 1 -
Complaint

Exhibit 2 - 00021

1   Ms. Nakhimovsky's Pinnacle Hip Systems failed in her body, causing excessive and toxic levels

2   of cobalt and chromium, tissue and bone destruction, and pain and suffering that required Ms.

3   Nakhimovsky to undergo a complicated and risky surgery to remove and replace the defective

4   implant.

5

6                                          **PARTIES**

7

8          2.      Plaintiff Tatyana Nakhimovsky is a citizen of the State of California and

9   resides in San Francisco, California.

10

11         3.      On information and belief, Defendant DePuy Orthopaedics, Inc. ("DePuy")

12  is a corporation organized and existing under the laws of Indiana with its primary place of

13  business in Warsaw, Indiana.  DePuy developed, manufactured, advertised, promoted, marketed,

14  sold and/or distributed the Pinnacle Hip System that is the subject of this lawsuit.

15

16         4.      On information and belief, Defendant Johnson & Johnson, Inc. ("J&J") is a

17  corporation organized and existing under the laws of New Jersey with its primary place of

18  business in New Brunswick, New Jersey.  J&J developed, manufactured, advertised, promoted,

19  marketed, sold and/or distributed the Pinnacle Hip System that is the subject of this lawsuit.

20

21         5.      On information and belief, Defendant Johnson & Johnson Services, Inc.

22  ("JJSI") is a corporation organized and existing under the laws of New Jersey with its primary

23  place of business in New Brunswick, New Jersey.  JJSI developed, manufactured, advertised,

24  promoted, marketed, sold and/or distributed the Pinnacle Hip System that is the subject of this

25  lawsuit.

26

27

28

SEEGER · SALVAS LLP

- 2 -

Complaint

Exhibit 2 - 00022

6.     On information and belief, Defendant DePuy International, Ltd. ("DIL") is a corporation organized under the laws of the United Kingdom with its primary place of business in Leeds, England.  DIL developed, manufactured, advertised, promoted, marketed, sold and/or distributed the Pinnacle Hip System that is the subject of this lawsuit.

7.     On information and belief, Defendant Thomas Schmalzried ("Schmalzried") is a citizen and resident of the State of California and he resides in Los Angeles. His involvement in this case is described in detail in the following paragraph.

8.     On information and belief, Defendant Thomas P. Schmalzried, M.D. A Professional Corporation ("TPS Corp.") is a corporation organized and existing under the laws of California with its primary place of business in Los Angeles, California.  Thomas P. Schmalzried, M.D. is believed to be the sole shareholder and employee of TPS Corp.  TPS Corp. and Schmalzried designed the Pinnacle Hip System hip implants that are the subject of this lawsuit. TPS Corp. and Schmalzried collect royalties for each hip implant sold, and in the last two years alone, they have collected more than $3.4 million in such royalty payments.  In addition to designing the Pinnacle Hip System hip implants that were implanted in Ms. Nakhimovsky and collecting royalties for the sale of Ms. Nakhimovsky's implants, TPS Corp. and Schmalzried were actively involved in promoting and marketing the Pinnacle Hip System hip implant.  TPS Corp., by and through its shareholder, director, and officer, Dr. Thomas Schmalzried, was a "product champion" for the Pinnacle Hip System.  In the orthopedics community, a "product champion" uses the reputation as a prominent orthopedic surgeon to encourage other orthopedic surgeons to use a particular orthopedic implant.  In his role as a "product champion" for the Pinnacle Hip System, Dr. Schmalzried, on behalf of TPS Corp., induced the sale of Ms. Nakhimovsky's implant by making representations to orthopedic surgeons, including Ms. Nakhimovsky's orthopedic surgeon, that the Pinnacle Hip System was safe and effective.  As a product champion for the Pinnacle Hip System, Schmalzried and TPS Corp. also played an

Complaint

Exhibit 2 - 00023

SEEGER • SALVAS LLP

1   integral role in DePuy's sale of the Pinnacle Hip System to Ms. Nakhimovsky. DePuy could not

2   have sold the Pinnacle Hip System without the endorsement of Schmalzried, and Schmalzried's

3   design and promotion of the implants were necessary factors in bringing the products to the

4   market. Given their prominent and necessary role as a product designer and product champion,

5   Schmalzried and TPS Corp. also had a substantial ability to influence DePuy's manufacturing and

6   distribution process. For example, if Schmalzried believed that a change should be made to the

7   design, manufacturing process, or warnings that accompanied the Pinnacle Hip System, DePuy

8   would have been required to make these changes otherwise it would have lost Schmalzried's

9   endorsement and would not have been able to sell the hip implant. Although TPS Corp. and

10  Schmalzried had the ability to change the design and manufacturing specifications of the Pinnacle

11  Hip System, they failed to do so after they learned that the product was defective. TPS Corp. and

12  Schmalzried knew or should have known about defects in the Pinnacle Hip System at the time

13  these products were sold to and implanted in Ms. Nakhimovsky. Despite this knowledge,

14  Schmalzried and TPS Corp. did not disclose that information to Ms. Nakhimovsky or her doctors.

15  Schmalzried and TPS Corp. had full knowledge of each report of failure of the Pinnacle Hip

16  System. As reports of failures of the Pinnacle Hip System mounted, Schmalzried and TPS Corp.

17  conspired with the other Defendants in this action to conceal this information from patients and

18  orthopedic surgeons, including Ms. Nakhimovsky's orthopedic surgeons, and to deflect blame for

19  the growing problems with the implants. Despite a legal duty to disclose information about the

20  defects of which Schmalzried and TPS Corp. were aware to Ms. Nakhimovsky and her doctors,

21  Schmalzried and TPS Corp. instead actively concealed these known defects and they instead

22  deflected blame for the mounting failures by blaming the surgical technique of the implanting

23  orthopedic surgeon. To this day, Schmalzried and TPS Corp. continue to conspire with the other

24  Defendants in this action to conceal the true information about the defects in the Pinnacle Hip

25  System, and Schmalzried and TPS Corp. continue their aggressive promotion of the defective

26  Pinnacle Hip System.

27

28

Exhibit 2 - 00024

9.     The true names and capacities of Does 1 through 20 are unknown to Plaintiffs. They are informed and believe and thereon allege that each of these Defendants are in some way liable for the events referred to in this Complaint and caused damage to them. Plaintiffs will amend this Complaint and insert the correct names and capacities of those Defendants when they are discovered.

10.     At all times mentioned, each of the Defendants—including DOES 1 through 20—was the representative, agent, employee, joint venturer, or alter ego of each of the other defendants and in doing the things alleged herein was acting within the scope of its authority as such. Specifically, each Defendant was but an instrumentality or conduit of the other in the prosecution of a single venture, namely the design, promotion, and sale of the Pinnacle Hip System. Therefore, it would be inequitable for any Defendant to escape liability for an obligation incurred as much for that Defendant's benefit as for the other Defendants

11.     DePuy, J&J, JJSI, DIL, Schmalzried, TPS Corp., and DOES 1 through 20 are collectively referred to herein as "Defendants."

## FACTUAL BACKGROUND

**A.      The Pinnacle Hip System Is Defective And Was Not Adequately Tested**

12.     The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (a ball-like structure at the very top of the femur) rotating within the acetabulum (a cup-like structure at the bottom of the pelvis.) In a healthy hip, both the femur and the acetabulum are strong and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids.



Exhibit 2 — 00025

13.     A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem (labeled as "hip implant" in the diagram to the left), (2) a femoral head, (3) a plastic (polyethylene) liner, and (4) an acetabular shell. After the surgeon hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball that is fixed on top of the femoral stem. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.



14.     While most hip replacements use a polyethylene *plastic* acetabular liner, DePuy's Pinnacle Hip System has a critical difference: it uses a *metal* acetabular liner. By using a metal acetabular liner and a metal femoral ball, the Pinnacle Hip System forces metal to rub against metal with the full weight and pressure of the human body. Because of Defendants' defective design for the Pinnacle Hip System, hundreds of patients—including Ms. Nakhimovsky—have been forced to undergo surgeries to replace the failed hip implants.

15.     The Pinnacle Hip System suffers from a similar design or manufacturing defect that forced DePuy to recall over 93,000 metal-on-metal ASR and ASR XL hip implants. While the exact nature of the common defect is still being investigated, Ms. Nakhimovsky believes that both hip implants suffer from one or more similar design or manufacturing defects that cause excessive amounts of cobalt and chromium to wear from the surface of the acetabular insert or from the femoral head. These cobalt and chromium fragments prompt the body to react by rejecting the hip implant. This rejection often manifests with symptoms of pain, looseness,

Complaint

Exhibit 2 - 00026

SEEGER · SALVAS LLP

dislocation, and squeaking and popping sounds.  Inside the hip joint, the metal reaction often causes fluids to accumulate and soft tissues and bone to die.

16.     The design of the Pinnacle Hip System was not sufficiently tested by the Defendants, and it was never approved by the FDA as being safe or effective for the products' intended purpose.

17.     Together with the other Defendants, Defendants Schmalzried and TPS Corp. were integral participants in the design, manufacture, and sale of the Pinnacle Hip System to Ms. Nakhimovsky, and these Defendants' promotion of the Pinnacle Hip System was a necessary factor in bringing the product to the market and selling it to Ms. Nakhimovsky.  For example, on numerous occasions, Schmalzried met with orthopedic surgeons, including Ms. Nakhimovsky's orthopedic surgeon, to promote the Pinnacle Hip Implant.   At some or all of these meetings, a representative or representatives of DePuy was present.  During these meeting, Schmalzried and the DePuy representatives assured the orthopedic surgeons, including Ms. Nakhimovsky's orthopedic surgeon, that the Pinnacle Hip System was safe, was the best product on the market, had an excellent track record and a low and acceptable failure rate.  Schmalzried and the DePuy representatives continued to "defend" the Pinnacle Hip Implant even after they became aware of numerous and serious complications with the Pinnacle Hip System.  Schmalzried and the DePuy representatives did not reveal (and instead concealed) their knowledge of numerous and serious complications and other "bad data" during their meetings with orthopedic surgeons, including Ms. Nakhimovsky's orthopedic surgeon.

**B.     The Defendants Sold the Pinnacle Hip Implants To Ms. Nakhimovsky After They Knew They Were Defective, That The Implants Had Injured Others, And That The Implants Would Injure Her**

18.     It wasn't long after the Defendants launched the Pinnacle Hip System that reports of failures began flooding into each of the Defendants.  For example, on May 4, 2002, the

Exhibit 2 - 00027

SEEGER · SALVAS LLP

1  Defendants received a complaint that a patient had to undergo a surgery to remove and replace

2  the hip implant because the liner disassociated with the cup.  DePuy closed its investigation of

3  this complaint, finding that "corrective action is not indicated."  Two weeks later, on May 17,

4  2002, the Defendants received another report that another patient had to undergo surgery to

5  remove and replace a defective hip implant because the acetabular cup had loosened.  Again,

6  DePuy closed its investigation of this

7  complaint, finding that "corrective

8  action is not indicated."



10      19.    The Defendants

11  would go on to receive hundreds of

12  similar complaints reporting that the

13  Pinnacle Hip System had failed due to

14  premature loosening of the acetabular

15  cup and that the failure had forced

16  patients to undergo painful and risky surgeries to remove and replace the failed hip component.

17  As the chart to the right shows, reports to the Defendants that the Pinnacle Hip System had failed

18  are skyrocketing.  For example, by the end of 2008, Defendants had received more than 430

19  reports and by the end of 2009, that number had increased to almost 750.  To date, the Defendants

20  have received more than *2,500 reports* claiming that the Pinnacle Hip System failed.

22      20.    By the time the Defendants sold the Pinnacle Hip Systems to Ms.

23  Nakhimovsky, each of them, including DePuy, Schmalzried, and TPS, had received numerous

24  complaints related to the Pinnacle Hip System.  Consequently, each of the Defendants was fully

25  aware that the Pinnacle Hip System was defective and that dozens of patients already had been

26  injured by that defect.  Based on this information, the Defendants should have recalled the

27  Pinnacle Hip System before it was sold to Ms. Nakhimovsky.  At minimum, the Defendants

28

SEEGER · SALVAS LLP

- 8 -

Complaint

Exhibit 2 — 00028

1    should have stopped selling the defective implant when they became aware that it had

2    catastrophically failed in several patients.

3

4         21.    Despite their knowledge that the Pinnacle Hip System had a defect and that

5    it had failed hundreds of times, causing hundreds of patients to undergo the agony of another

6    surgery, the Defendants continued to sell the defective hip implant.  In so doing, the Defendants

7    actively concealed the known defect from doctors and patients—including Ms. Nakhimovsky and

8    her doctor—and misrepresented that that the Pinnacle Hip System was a safe and effective

9    medical device.

10

11        22.    As numerous failures of the Pinnacle Hip Implant were reported to each of

12   the Defendants, including DePuy, Schmalzried, and TPS Corp., they continued to actively

13   promote, market and defend the defective products.  For example, Schmalzried authored many

14   marketing brochures for DePuy touting the safety and durability of metal-on-metal implants and

15   specifically, the Pinnacle Hip System.  These brochures containing Schmalzried's endorsements

16   were given to doctors around the world, including Ms. Nakhimovsky's orthopedic surgeon, to

17   encourage them to use the Pinnacle Hip System.  In the brochure titled "Advancing High Stability

18   and Low Wear," Schmalzried made several false representations about the quality and safety of

19   the Pinnacle Hip System.  For example, he said:

20

21         ○    "Modular acetabular components, such as Pinnacle™, have the advantage

22             of a high stability, low wear metal or crosslinked polyethylene bearing

23             within the same construct."

24

25         ○    "There is no mystery regarding the allure of metal-on-metal bearings: 1)

26             larger diameter bearings have greater stability and 2) when properly

27             positioned, the wear rate has been documented to be very low in vivo for

28             three decades."

SEEGER · SALVAS LLP

- 9 -

Complaint

Exhibit 2 - 00029

- "The wear of a well-made and well-mated metal-on-metal bearing is very low and decreases as the diameter increases."

23.   Despite their knowledge that the Pinnacle Hip System was defective, Schmalzried and TPS also made several false representations about specific design elements of the Pinnacle Hip System that they claimed made it superior to other more safe hip implants on the market.  For example, they said:

- "Given that the material has high carbon content, metallurgy has little effect on bearing wear."

- "Low-carbon materials exhibit higher wear than high carbon materials."

- "There is little difference in the wear of high-carbon wrought or cast materials."

- "Initial running-in wear decreases as the bearing diameter increases and/or the diametrical clearance decreases."

- "Lower clearance has been associated with lower ion levels in vivo."

24.   The Defendants' reason to conceal the defect in its Pinnacle Hip System is clear.  In 2009 alone, DePuy brought in more than $5.4 billion in sales and Schmalzried and TPS brought in more than $2 million.  Hip implant sales are critically important to DePuy's parent company, Johnson & Johnson, and DePuy is one of Johnson & Johnson's most profitable business groups.  The Defendants were faced with a critical defect in one of their hip implant systems.  The last thing the Defendants wanted to do was to admit that these popular products had a critical defect that could cause a premature failure, forcing patients to have to undergo another painful surgery.  Focused on corporate profits, and at the expense of patient safety, each of the Defendants decided that they would continue to promote, market, and sell the Pinnacle Hip

- 10 -

Complaint

Exhibit 2 - 00030

System despite the fact that they each knew the product was defective.  To this day, the

Defendants continue to sell these defective implants to unsuspecting patients without any warning

about the risks or the failures that have been reported to the company.

**C.**   **Ms. Nakhimovsky's Pinnacle Hip System Was Defective And Failed, and Forced Her To Need An Additional Painful And Risky Surgery**

25.   On May 23, 2007, Ms. Nakhimovsky underwent a surgical procedure to

implant the Pinnacle Hip System in her left hip.  By this time, each of the Defendants had already

received numerous reports that the Pinnacle Hip System had failed and they knew that the product

was defective, but Defendants refused to disclose that information to Ms. Nakhimovsky, her

physicians, or the public.  Instead, the Defendants misrepresented to Ms. Nakhimovsky and her

orthopedic surgeon that the Pinnacle Hip System was safe and effective.  In reliance on these

representations, Ms. Nakhimovsky's orthopedic surgeon made the decision to use the Pinnacle

Hip System.  If it were not for the misrepresentations made by each of the Defendants, including

DePuy, Schmalzried, and TPS, Ms. Nakhimovsky's orthopedic surgeon would not have used the

Pinnacle Hip System in Ms. Nakhimovsky's hip replacement surgeries.

26.   As a result of the design, manufacture and composition of the Pinnacle Hip

System, and its accompanying warnings and instructions (or lack thereof), Ms. Nakhimovsky's

hip implants failed, causing his severe pain.

27.   The failure of the Pinnacle Hip Systems also resulted in Ms. Nakhimovsky

having toxic levels of cobalt and chromium in his body.  The Pinnacle Hip System has an

articulating surface that is made from cobalt and chromium.  As the defective implant degrades in

Ms. Nakhimovsky's hip, toxic amounts of cobalt and chromium made their way into her hip joint,

into her Nakhimovsky stream, and circulated around her body.  These toxic metals damaged the

Complaint

Exhibit 2 - 00031

tissue surrounding Ms. Nakhimovsky's hip joint and are likely to have accumulated in her heart, lungs, kidneys, liver, and brain.

28.     An article published in the *Journal of Joint and Bone Surgery* describes some of the systemic effects that can be caused by exposure to high levels of cobalt and chromium in the Nakhimovsky, many of which were experienced by Ms. Nakhimovsky as a result of the defective Pinnacle Hip System implanted in his body. Dr. Stephen S. Tower, a noted orthopedic surgeon from Alaska, profiled two patients who had ASR hip implants. One patient (Dr. Tower himself) had a Nakhimovsky cobalt level of 122 µg/L and suffered from symptoms including impaired heart function, cognitive decline, depression, anxiety, headaches, irritability, fatigue, tinnitus, and high-frequency hearing loss. A second patient had Nakhimovsky cobalt levels of 23 µg/L and suffered from symptoms including cognitive decline, vertigo, hearing loss, groin pain, rashes, and dyspnea. Discussing these cases, Dr. Tower said:

> *Patients with metal-on-metal hips are at risk for cobaltism if the bearings wear excessively or if renal function declines. Most patients with metal-on-metal implants have higher serum cobalt levels than industrial workers and may be at risk for subclinical cognitive and cardiac impairment. A serum cobalt level of >20 µg/L is common in some groups of patients with metal-on-metal implants and may result in symptomatic neurological and cardiac cobaltism. Severe neurological and cardiac impairments have been reported in association with arthroprosthetic cobaltism when serum cobalt exceeds 60 µg/L.*

29.     On March 1, 2013, Ms. Ms. Nakhimovsky underwent a complex, risky, and painful surgery (known as a "revision surgery") to remove the Pinnacle Hip System from her body. Revision surgeries are generally more complex than the original hip replacement surgery, often because there is a reduced amount of bone in which to place the new hip implants. Revision surgeries also usually take longer than the original hip replacement surgery and the revision surgery has a higher rate of complications.

Exhibit 2 - 00032

SEEGER • SALVAS LLP

30.     Having to go through a revision surgery has subjected Ms. Nakhimovsky to much greater risks of future complications than she had before the revision surgery.  For example, several studies have found that a revision surgery causes a much higher risk of dislocation compared with an original hip replacement surgery.  In one study conducted by Jan Phillips and her colleagues at Brigham and Women's Hospital in Boston, 14.4 percent of patients who underwent a revision surgery suffered from a dislocation compared with 3.9 percent of patients who underwent a original hip replacement surgery.  In other words, hip replacement patients who have undergone a revision surgery are almost *four times more likely* to suffer from a hip dislocation than those who have not.  (Phillips CB, *et al.*  Incidence rates of dislocation, pulmonary embolism, and deep infection during the first six months after elective total hip replacement. *American Journal of Bone and Joint Surgery* 2003; 85:20–26.)

31.     As a direct and proximate result of the failure of his defective Pinnacle Hip System and the Defendants' wrongful conduct, Ms. Nakhimovsky sustained and continues to suffer economic damages, severe and possibly permanent injuries, pain, suffering and emotional distress.  As a result, Ms. Nakhimovsky has sustained and will continue to sustain damages in an amount to be proven at trial, but which will far exceed the jurisdictional minimum of this court.

**FIRST CAUSE OF ACTION**
(Strict Product Liability)
Against All Defendants

32.     Ms. Nakhimovsky incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

33.     Defendants designed, manufactured, promoted, distributed, marketed, and sold the Pinnacle Hip System.

- 13 -

Complaint

Exhibit 2 - 00033

34.     Defendants Schmalzried and TPS Corp. were integral parts of the sale of the Pinnacle Hip System to Ms. Nakhimovsky, and these Defendants' promotion of the Pinnacle Hip System was a necessary factor in bringing the product to the market and selling it to Ms. Nakhimovsky.

35.     At all times material hereto, the Pinnacle Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by the Defendants was expected to reach, and did reach, prescribing physicians and consumers, including Ms. Nakhimovsky and his physician, without substantial change in the condition in which it was sold.

36.     At all times material hereto, the Pinnacle Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by the Defendants was in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce. Such condition included, but is not limited to, one or more of the following particulars:

(a)     When placed in the stream of commerce, the Pinnacle Hip System contained manufacturing defects, subjecting Ms. Nakhimovsky and others to risks, including the risk that the acetabular component would not properly grow into the bone, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product;

(b)     When placed in the stream of commerce, the Pinnacle Hip System contained unreasonably dangerous design defects and was not reasonably safe for the intended use, subjecting Ms. Nakhimovsky and others to risks, including the risk that the acetabular component would not properly grow into the bone, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product;

SEEGER · SALVAS LLP

(c)     The Pinnacle Hip System was insufficiently tested; and

(d)     The Pinnacle Hip System was not accompanied by adequate instructions and/or warnings to fully inform Ms. Nakhimovsky or his physicians of the full nature or extent of the risks associated with its use.

37.     Defendants knew or should have known of the dangers associated with the use of the Pinnacle Hip System, as well as the defective nature of the Pinnacle Hip System. Despite this knowledge, Defendants continued to manufacture, sell, distribute, promote and supply the Pinnacle Hip System so as to maximize sales and profits at the expense of the public health and safety. Defendants' conduct was done in conscious disregard of the foreseeable harm caused by the Pinnacle Hip System and in conscious disregard for the rights and safety of consumers such as Ms. Nakhimovsky.

38.     Ms. Nakhimovsky and his doctor used the Pinnacle Hip System as directed for its intended purpose.

39.     At all times herein mentioned, the Pinnacle Hip System was defective, and Defendants knew that it was to be used by the user without inspection for defects therein. Moreover, at the time of the use of the subject products, neither Ms. Nakhimovsky nor her physician knew or had reason to know of the existence of the aforementioned defects. Neither Ms. Nakhimovsky nor her physicians could have discovered the defects in the Pinnacle Hip System through the exercise of reasonable care.

40.     The Pinnacle Hip System had not been materially altered or modified prior to its implantation in Ms. Nakhimovsky.

- 15 -

Complaint

SEEGER · SALVAS LLP

Exhibit 2 - 00035

41.     As a direct and proximate result of the failure of the defective Pinnacle Hip System, Ms. Nakhimovsky suffered the injuries and damages as described herein.

**SECOND CAUSE OF ACTION**
(Negligence)
Against All Defendants

42.     Ms. Nakhimovsky incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

43.     At all times herein mentioned Defendants had a duty to exercise reasonable care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the Pinnacle Hip System to ensure that it would be safely used in a manner and for a purpose for which it was made.

44.     Defendants maliciously, recklessly and/or negligently failed to exercise ordinary care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the Pinnacle Hip System.

45.     Defendants maliciously, recklessly and/or negligently failed in their duty to exercise reasonable care in the provision of an adequate warning to Ms. Nakhimovsky and his physicians as to the risks of the Pinnacle Hip System.

46.     Defendants maliciously, recklessly and/or negligently failed to exercise reasonable care in the post-marketing warnings as to the risks of the Pinnacle Hip System when they knew or should have known of said risks.

Complaint

SEEGER • SALVAS LLP

Exhibit 2 - 00036

47.     Defendants' conduct was done in conscious disregard of the foreseeable harm caused by the Pinnacle Hip System and in conscious disregard for the rights and safety of consumers such as Ms. Nakhimovsky.

48.     As a result of Defendants' wrongful conduct, Ms. Nakhimovsky suffered injuries and damages as alleged herein.

<u>THIRD CAUSE OF ACTION</u>
(Fraud)
Against DePuy, Schmalzried, TPS Corp. and DOES 1 – 20

49.     Ms. Nakhimovsky incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

50.     As set forth above, Defendants made numerous representations to Ms. Nakhimovsky, and her orthopedic surgeon, that the Pinnacle Hip System was safe, effective and that Pinnacle Hip System had specific design elements that made it superior to other safer implants on the market.

51.     These representations were knowingly false when made by Defendants and were made with the intention to deceive and induce Ms. Nakhimovsky and her doctors to use the Pinnacle Hip System.  Furthermore, Defendants knew about defects in the Pinnacle Hip System at the time the Pinnacle Hip System was sold to and implanted in Ms. Nakhimovsky but did not disclose that information to Ms. Nakhimovsky or her doctors.

52.     Ms. Nakhimovsky, and her doctors, at the time these representations were made, were ignorant of the falsity of the representations and were justified in relying on Defendants' representations.

SEEGER · SALVAS LLP

- 17 -
Complaint

Exhibit 2 - 00037

53.     As a proximate result of Defendants' fraudulent conduct, Ms. Nakhimovsky has been, and continues to be damaged in a sum yet to be fully determined, but will be proven at trial, which exceeds the jurisdictional minimum of this court.

54.     Defendants' acts, representations or omissions, as set forth above, were done in conscious disregard of Ms. Nakhimovsky' rights and with oppression, fraud, malice, justifying an award of punitive damages.

### FOURTH CAUSE OF ACTION
(Negligent Misrepresentation)
Against DePuy, Schmalzried, TPS Corp. and DOES 1 – 20

55.     Ms. Nakhimovsky incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

56.     As set forth above, Defendants made numerous representations to Ms. Nakhimovsky, and her orthopedic surgeon, that the Pinnacle Hip System was safe, effective and that Pinnacle Hip System had specific design elements that made it superior to other safer implants on the market.  At the time these statements were made, Defendants had no reasonable grounds for believing them to be true and Defendants made the representations negligently and carelessly and with the intention of inducing Ms. Nakhimovsky and her orthopaedic surgeon to use the Pinnacle Hip System.

57.     Ms. Nakhimovsky, and her doctors, at the time these representations were made were ignorant of the falsity of the representations and were justified in relying on these representations.

Exhibit 2 - 00038

58. As a proximate result of Defendants' conduct, Ms. Nakhimovsky has been, and continues to be damaged in a sum yet to be fully determined, but will be proven at trial, which exceeds the jurisdictional minimum of this court.

59. Defendants' acts, representations or omissions, as set forth above, were done in conscious disregard of Ms. Nakhimovsky' rights and with oppression, fraud, malice, justifying an award of punitive damages.

### FIFTH CAUSE OF ACTION
(Breach of Implied Warranties)
Against DePuy and DOES 1 - 10

60. Ms. Nakhimovsky incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

61. Prior to the time that the Pinnacle Hip System was used by Ms. Nakhimovsky, Defendants impliedly warranted to Ms. Nakhimovsky and her physicians that the Pinnacle Hip System was of merchantable quality and safe and fit for the use for which it was intended.

62. Ms. Nakhimovsky and her physician were and are unskilled in the research, design and manufacture of the Pinnacle Hip System, and they reasonably relied entirely on the skill, judgment and implied warranty of Defendants in using the Pinnacle Hip System.

63. The Pinnacle Hip System was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

SEEGER · SALVAS LLP

- 19 -

Exhibit 2 - 00039

64.     Defendants, by selling, delivering and/or distributing the defective Pinnacle Hip System to Ms. Nakhimovsky, breached the implied warranty of merchantability and fitness and caused Ms. Nakhimovsky to suffer severe pain and emotional distress, incur medical expenses and incur a loss of earning capacity.

65.     As a result of the aforementioned breach of implied warranties by Defendants, Ms. Nakhimovsky suffered injuries and damages as alleged herein.

### SIXTH CAUSE OF ACTION
(Breach of Express Warranty)
Against DePuy and DOES 1 – 10

66.     Ms. Nakhimovsky incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

67.     At all times herein mentioned, Defendants expressly warranted to Ms. Nakhimovsky and her physicians, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that the aforementioned Pinnacle Hip System was safe, effective, fit and proper for its intended use.

68.     In utilizing the aforementioned Pinnacle Hip System, Ms. Nakhimovsky and her physician relied on the skill, judgment, representations and foregoing express warranties of Defendants.

69.     Said warranties and representations were false in that the aforementioned Pinnacle Hip System was not safe and was unfit for the uses for which it was intended.

- 20 -

Complaint

SEEGER · SALVAS LLP

Exhibit 2 - 00040

70.     As a result of the foregoing breach of express warranties by Defendants, Ms. Nakhimovsky suffered injuries and damages as alleged herein.

### PRAYER FOR RELIEF

THEREFORE, Plaintiff demands judgment for the following:

1.      Past and future lost wages, medical and incidental expenses, according to proof;

2.      Past and future general damages, according to proof;

3.      Punitive and exemplary damages in an amount to be determined at trial;

4.      Prejudgment and post judgment interest;

5.      Costs to bring this action; and

6.      Such other and further relief as the court may deem just and proper.

DATED:  August 4, 2014.

SEEGER • SALVAS LLP

By _____
Adam R. Salvas
Attorneys for Plaintiff
Tatyana Nakhimovsky

- 21 -

Complaint

Exhibit 2 - 00041

## SEEGER • SALVAS LLP
ATTORNEYS AT LAW
455 MARKET STREET
SUITE 1530
SAN FRANCISCO, CALIFORNIA 94105
WWW.SEEGERSALVAS.COM

TEL. (415) 981-9260
FAX (415) 981-9266



Adam R. Salvas
E-mail Address: asalvas@seegersalvas.com

October 10, 2014

**VIA CERTIFED MAIL, RETURN RECEIPT REQUESTED**
President
Johnson & Johnson Services, Inc.
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

Re:   Nakhimovsky v. DePuy Orthopaedics, Inc. et al.

To Whom It May Concern:

Please find the enclosed Complaint, Summons, Notice to Plaintiff, Civil Case Cover Sheet and ADR Program Information Package.

Very truly yours,

Adam R. Salvas

Exhibit 2 - 00042

# SEEGER • SALVAS LLP
### ATTORNEYS AT LAW
455 MARKET STREET
SUITE 1530
SAN FRANCISCO, CALIFORNIA 94105
WWW.SEEGERSALVAS.COM

TEL. (415) 981-9260
FAX (415) 981-9266

A. GORSKY

OCT 1 5 2014

Sd/6620

Adam R. Salvas
E-mail Address: asalvas@seegersalvas.com

October 10, 2014

RECEIVED
OCT 1 6 2014
Law Department

**VIA CERTIFED MAIL, RETURN RECEIPT REQUESTED**
Alex Gorsky
Chief Executive Officer
Johnson & Johnson, Inc.
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

    Re:    Nakhimovsky v. DePuy Orthopaedics, Inc. et al.

To Whom It May Concern:

Please find the enclosed Complaint, Summons, Notice to Plaintiff, Civil Case
Cover Sheet and ADR Program Information Package.

Very truly yours,

Adam R. Salvas

Exhibit 2 - 00043

| | SUM-100 |
|---|---|
| **SUMMONS** <br> *(CITACION JUDICIAL)* | **FOR COURT USE ONLY** <br> *(SOLO PARA USO DE LA CORTE)* |

OCT 16 2014

Law Department

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DePuy Orthopaedics, Inc.; Johnson & Johnson Services, Inc.; Johnson & Johnson, Inc.; DePuy International, Ltd. (continued)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Tatyana Nakhimovsky

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* San Francisco Superior Court <br> 400 McAllister Street, S.F., CA 94102 | **CASE NUMBER:** <br> *(Número del Caso)* **14-540916** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kenneth M. Seeger, Seeger Salvas LLP, 455 Market Street, Suite 1530, S.F., CA 94105 (415) 981-9260

| DATE: AUG 0 5 2014 <br> *(Fecha)* | CLERK OF THE COURT <br> Clerk, by <br> *(Secretario)* | D. STEPPE | , Deputy <br> *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* Johnson & Johnson, Inc.

under: [X] CCP 416.10 (corporation)  [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)

[X] other *(specify):* CCP § 415.40
4. [ ] by personal delivery on *(date):*

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Page 1 of 1 <br> Code of Civil Procedure §§ 412.20, 465 <br> www.courtinfo.ca.gov |
|---|---|---|

Exhibit 2 - 00044

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Nakhimovsky v. DePuy Orthopaedics, Inc. et al. | |

### INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

| ☐ Plaintiff | ☑ Defendant | ☐ Cross-Complainant | ☐ Cross-Defendant |
|---|---|---|---|

Thomas P. Schmalzried, M.D.
Thmas P. Schmalzried, M.D. A Professional Corporation
Does 1 through 20

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

Exhibit 2 — 00045

RECEIVED
OCT 1 6 2014
Law Department

ENDORSED
FILED

1  Kenneth M. Seeger (State Bar No. 135862)
   Adam R. Salvas (State Bar No. 191379)
2  Brian J. Devine (State Bar No. 215198)
   SEEGER • SALVAS LLP
3  455 Market Street, Suite 1530
   San Francisco, CA  94105
4
   Telephone:   (415) 981-9260
5  Facsimile:   (415) 981-9266
6  Attorneys for Plaintiff
   Tatyana Nakhimovsky
7
8

Date Served: 10/13/14
Company Served: SJ          D. STEPPE
Certified CT  Personal  Reg. Mail  FEDEX  NP
Date Rec'd by Law Dept: 10/16/14
Entered Into TeamConnect: Yes      No
Matter ID #: 2014013080

SUPERIOR COURT OF CALIFORNIA

FOR THE CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| 11  TATYANA NAKHIMOVSKY, | No. CGC-14-540916 |
| 12          Plaintiff, | COMPLAINT FOR: |
| 13  vs. | (1) STRICT PRODUCT LIABILITY, |
| 14  DEPUY ORTHOPAEDICS, INC., | (2) NEGLIGENCE, |
|     JOHNSON & JOHNSON SERVICES, | (3) FRAUD |
| 15  INC., JOHNSON & JOHNSON, INC., | (4) NEGLIGENT MISREPRESENTATION |
|     DEPUY INTERNATIONAL, LTD., | (5) BREACH OF IMPLIED |
| 16  THOMAS P. SCHMALZRIED, M.D., |     WARRANTIES, |
|     THOMAS P. SCHMALZRIED, M.D. A | (6) BREACH OF EXPRESS WARRANTY |
| 17  PROFESSIONAL CORPORATION; and | |
|     DOES 1 through 20, inclusive, | |
| 18 | JURY TRIAL DEMANDED |
| 19          Defendants. | |

1.      This is a product liability case involving a defective hip implant system.
Plaintiff Tatyana Nakhimovsky had a Pinnacle Hip System[1] implanted in her left hip.  The
Pinnacle Hip System suffers from defects that cause excessive amounts of cobalt and chromium
to wear from the surface of the acetabular insert and from the femoral head, which in turn causes
the hip implant to fail and the surrounding tissue and bone to die.  As a result of these defects,

[1] The Pinnacle Hip Systems that were implanted in Ms. Nakhimovsky were comprised of an acetabular cup, a metal-
on-metal insert, a metal-on-metal femoral head, and a femoral stem.

- 1 -
Complaint

SEEGER • SALVAS LLP

Exhibit 2 - 00046

## SEEGER • SALVAS LLP

ATTORNEYS AT LAW

455 MARKET STREET
SUITE 1530
SAN FRANCISCO, CALIFORNIA 94105
WWW.SEEGERSALVAS.COM

TEL. (415) 981-9260
FAX (415) 981-9266

OCT 17 2014

Adam R. Salvas
E-mail Address: asalvas@seegersalvas.com

October 10, 2014

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
President
DePuy Orthopaedics, Inc.
700 Orthopaedic Drive
Warsaw, IN 46581

Re:   Nakhimovsky v. DePuy Orthopaedics, Inc. et al.

To Whom It May Concern:

Please find the enclosed Complaint, Summons, Notice To Plaintiff, Civil Case
Cover Sheet and ADR Program Information Package.

Very truly yours,

Adam R. Salvas

Exhibit 2 - 00047

1  Kenneth M. Seeger (State Bar No. 135862)
   Adam R. Salvas (State Bar No. 191379)
2  Brian J. Devine (State Bar No. 215198)
   SEEGER ● SALVAS LLP
3  455 Market Street, Suite 1530
   San Francisco, CA  94105
4
   Telephone:     (415) 981-9260
5  Facsimile:      (415) 981-9266

6  Attorneys for Plaintiff
   Tatyana Nakhimovsky
7

8
                    SUPERIOR COURT OF CALIFORNIA
9
              FOR THE CITY AND COUNTY OF SAN FRANCISCO
10

11  TATYANA NAKHIMOVSKY,              No. CGC-14-540916

12          Plaintiff,                COMPLAINT FOR:

13      vs.                           (1) STRICT PRODUCT LIABILITY,
                                      (2) NEGLIGENCE,
14  DEPUY ORTHOPAEDICS, INC.,         (3) FRAUD
    JOHNSON & JOHNSON SERVICES,       (4) NEGLIGENT MISREPRESENTATION
15  INC., JOHNSON & JOHNSON, INC.,    (5) BREACH OF IMPLIED
    DEPUY INTERNATIONAL, LTD.,            WARRANTIES,
16  THOMAS P. SCHMALZRIED, M.D.,      (6) BREACH OF EXPRESS WARRANTY
    THOMAS P. SCHMALZRIED, M.D. A
17  PROFESSIONAL CORPORATION; and
    DOES 1 through 20, inclusive,
18                                    JURY TRIAL DEMANDED
            Defendants.
19

20

21

22          1.      This is a product liability case involving a defective hip implant system.

23  Plaintiff Tatyana Nakhimovsky had a Pinnacle Hip System[1] implanted in her left hip.  The

24  Pinnacle Hip System suffers from defects that cause excessive amounts of cobalt and chromium

25  to wear from the surface of the acetabular insert and from the femoral head, which in turn causes

26  the hip implant to fail and the surrounding tissue and bone to die.  As a result of these defects,

27  ---
    [1] The Pinnacle Hip Systems that were implanted in Ms. Nakhimovsky were comprised of an acetabular cup, a metal-
28  on-metal insert, a metal-on-metal femoral head, and a femoral stem.

                                        - 1 -

Exhibit 2 — 00048

1   Ms. Nakhimovsky's Pinnacle Hip Systems failed in her body, causing excessive and toxic levels

2   of cobalt and chromium, tissue and bone destruction, and pain and suffering that required Ms.

3   Nakhimovsky to undergo a complicated and risky surgery to remove and replace the defective

4   implant.

5

6                                    **PARTIES**

7

8           2.      Plaintiff Tatyana Nakhimovsky is a citizen of the State of California and

9   resides in San Francisco, California.

10

11          3.      On information and belief, Defendant DePuy Orthopaedics, Inc. ("DePuy")

12  is a corporation organized and existing under the laws of Indiana with its primary place of

13  business in Warsaw, Indiana.  DePuy developed, manufactured, advertised, promoted, marketed,

14  sold and/or distributed the Pinnacle Hip System that is the subject of this lawsuit.

15

16          4.      On information and belief, Defendant Johnson & Johnson, Inc. ("J&J") is a

17  corporation organized and existing under the laws of New Jersey with its primary place of

18  business in New Brunswick, New Jersey.  J&J developed, manufactured, advertised, promoted,

19  marketed, sold and/or distributed the Pinnacle Hip System that is the subject of this lawsuit.

20

21          5.      On information and belief, Defendant Johnson & Johnson Services, Inc.

22  ("JJSI") is a corporation organized and existing under the laws of New Jersey with its primary

23  place of business in New Brunswick, New Jersey.  JJSI developed, manufactured, advertised,

24  promoted, marketed, sold and/or distributed the Pinnacle Hip System that is the subject of this

25  lawsuit.

26

27

28

SEEGER · SALVAS LLP

Exhibit 2 - 00049

6.      On information and belief, Defendant DePuy International, Ltd. ("DIL") is a corporation organized under the laws of the United Kingdom with its primary place of business in Leeds, England.  DIL developed, manufactured, advertised, promoted, marketed, sold and/or distributed the Pinnacle Hip System that is the subject of this lawsuit.

7.      On information and belief, Defendant Thomas Schmalzried ("Schmalzried") is a citizen and resident of the State of California and he resides in Los Angeles. His involvement in this case is described in detail in the following paragraph.

8.      On information and belief, Defendant Thomas P. Schmalzried, M.D. A Professional Corporation ("TPS Corp.") is a corporation organized and existing under the laws of California with its primary place of business in Los Angeles, California.  Thomas P. Schmalzried, M.D. is believed to be the sole shareholder and employee of TPS Corp.  TPS Corp. and Schmalzried designed the Pinnacle Hip System hip implants that are the subject of this lawsuit. TPS Corp. and Schmalzried collect royalties for each hip implant sold, and in the last two years alone, they have collected more than $3.4 million in such royalty payments.  In addition to designing the Pinnacle Hip System hip implants that were implanted in Ms. Nakhimovsky and collecting royalties for the sale of Ms. Nakhimovsky's implants, TPS Corp. and Schmalzried were actively involved in promoting and marketing the Pinnacle Hip System hip implant.  TPS Corp., by and through its shareholder, director, and officer, Dr. Thomas Schmalzried, was a "product champion" for the Pinnacle Hip System.  In the orthopedics community, a "product champion" uses the reputation as a prominent orthopedic surgeon to encourage other orthopedic surgeons to use a particular orthopedic implant.  In his role as a "product champion" for the Pinnacle Hip System, Dr. Schmalzried, on behalf of TPS Corp., induced the sale of Ms. Nakhimovsky's implant by making representations to orthopedic surgeons, including Ms. Nakhimovsky's orthopedic surgeon, that the Pinnacle Hip System was safe and effective.  As a product champion for the Pinnacle Hip System, Schmalzried and TPS Corp. also played an

SEEGER - SALVAS LLP

integral role in DePuy's sale of the Pinnacle Hip System to Ms. Nakhimovsky. DePuy could not have sold the Pinnacle Hip System without the endorsement of Schmalzried, and Schmalzried's design and promotion of the implants were necessary factors in bringing the products to the market. Given their prominent and necessary role as a product designer and product champion, Schmalzried and TPS Corp. also had a substantial ability to influence DePuy's manufacturing and distribution process. For example, if Schmalzried believed that a change should be made to the design, manufacturing process, or warnings that accompanied the Pinnacle Hip System, DePuy would have been required to make these changes otherwise it would have lost Schmalzried's endorsement and would not have been able to sell the hip implant. Although TPS Corp. and Schmalzried had the ability to change the design and manufacturing specifications of the Pinnacle Hip System, they failed to do so after they learned that the product was defective. TPS Corp. and Schmalzried knew or should have known about defects in the Pinnacle Hip System at the time these products were sold to and implanted in Ms. Nakhimovsky. Despite this knowledge, Schmalzried and TPS Corp. did not disclose that information to Ms. Nakhimovsky or her doctors. Schmalzried and TPS Corp. had full knowledge of each report of failure of the Pinnacle Hip System. As reports of failures of the Pinnacle Hip System mounted, Schmalzried and TPS Corp. conspired with the other Defendants in this action to conceal this information from patients and orthopedic surgeons, including Ms. Nakhimovsky's orthopedic surgeons, and to deflect blame for the growing problems with the implants. Despite a legal duty to disclose information about the defects of which Schmalzried and TPS Corp. were aware to Ms. Nakhimovsky and her doctors, Schmalzried and TPS Corp. instead actively concealed these known defects and they instead deflected blame for the mounting failures by blaming the surgical technique of the implanting orthopedic surgeon. To this day, Schmalzried and TPS Corp. continue to conspire with the other Defendants in this action to conceal the true information about the defects in the Pinnacle Hip System, and Schmalzried and TPS Corp. continue their aggressive promotion of the defective Pinnacle Hip System.

Complaint

Exhibit 2 - 00051

**PROOF OF SERVICE**

I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 2029 Century Park East, Suite 300, Los Angeles, California  90067.  On November 12, 2014, I served a copy of the within document(s):

1.  **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)**

☒   BY UNITED STATES MAIL by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.

☐   BY ELECTRONIC MAIL  I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

in a sealed envelope, postage fully paid, addressed as follows:

Kenneth M. Seeger, Esq.
Adam R. Salvas, Esq.
Brian J. Devine, Esq.
**Seeger •Salvas LLP**
455 Market Street, Suite 1530
San Francisco, CA  94015
Telephone: (415) 981-9260
Facsimile: (415) 981-9266
**Attorneys for Plaintiff, Tatyana Nakhimovsky**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 12, 2014, at Los Angeles, California.

Brigette Price

PROOF OF SERVICE

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES